Derby Durfin HURLSTON,

v.

BOUCHARD TRANSPORTATION, CO., INC., Tug Ellen S. Bouchard, Inc., and Tug Ellen S. Bouchard Corporation.

Civil Action No. G–96–458.

United States District Court,
S.D. Texas,
Galveston Division.

July 31, 1997.

Arthur Louis Schechter, Arthur L. Schechter and Associates, Galveston, TX, for plaintiff.

Kenneth D. Kuykendall, Royston Rayzor Vickery and Williams, Houston, TX, for defendants.

### ORDER DENYING MOTION TO DISMISS AND DENYING MOTION TO TRANSFER VENUE

KENT, District Judge.

Now before the Court is Defendants' Amended Motion to Dismiss for Lack of Personal Jurisdiction or Alternative Amended Motion to Transfer Venue to the Southern District of New York, dated July 3, 1997. For the reasons set forth below, both of the Defendants' Motions are **DENIED**.

Plaintiff has brought this action to recover for injuries he allegedly sustained while he was Chief Engineer onboard the Tug ELLEN S. BOUCHARD at sea off the coast of Florida on June 1 and June 23, 1996. Tug Ellen S. Bouchard Corporation was the owner of the vessel and Plaintiff's employer at the time of the alleged incidents. Bouchard Transportation Co., Inc. was the manager and operator of the vessel. At the time of the alleged incidents, the ELLEN S. BOUCHARD was en route from the Houston–Galveston area to Port Manatee, Florida.

Defendants admit that the vessel has made visits to ports in Texas.[1] Defendants argue that these visits were infrequent and not under their control as the tug's movements were governed by a charter agreement. However, the charter agreement appears to be nothing more than Defendants' clients asking the Defendants to move cargo from place to place. For example, under the arrangement, the Defendants are fully responsible for the crew and vessel, including maintenance and cure obligations, not the "charterer."

Plaintiff is a resident of Louisiana. Many of the key fact witnesses also reside outside of the State of Texas; however, these witnesses are scattered throughout Louisiana, Florida, Massachusetts, Maryland, New York, Delaware, New Jersey, and Connecticut, rather than being concentrated in one area. On the other hand, many of the expert witnesses expected to testify at trial are concentrated in the Houston–Galveston area, such as Plaintiff's treating physician, Plaintiff's vocational rehabilitation expert, Plaintiff's economist, Defendants' medical expert, Defendants' vocational expert, Defendants' economist, and Defendants' liability expert.

In federal court, personal jurisdiction over a non-resident defendant is proper if: (1) the defendant is amenable to service of process under the forum state's long-arm statute; and (2) the exercise of personal jurisdiction over the defendant is consistent with due process. *Jones v. Petty–Ray Geophysical Geosource, Inc.*, 954 F.2d 1061 (5th Cir.), *cert. denied*, 506 U.S. 867, 113 S.Ct. 193, 121 L.Ed.2d 136 (1992). The Texas long-arm statute authorizes service of process on a non-resident defendant if the defendant "does business" in Texas. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042. Because the phrase "doing business" has been interpreted to reach as far as Constitutionally permissible, the jurisdictional inquiry under the Texas long-arm statute collapses into a single due process inquiry. *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir.1993); *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356–57 (Tex.1990).

Whether the exercise of personal jurisdiction over these Defendants is consistent with the Due Process Clause of the United States Constitution involves a two-pronged inquiry. First, the Court must conclude that the Defendants have "minimum contacts" with Texas. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Second, the Court must also conclude that requiring the Defendants to litigate in Texas does not offend "traditional notions of fair play and substantial justice." *Id.*; *see also Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir.), *cert. denied*, 513 U.S. 930, 115 S.Ct. 322, 130 L.Ed.2d 282 (1994); *Ruston*, 9 F.3d at 418.

The "minimum contacts" aspect of due process can be satisfied by either finding specific jurisdiction or general jurisdiction. *Wilson*, 20 F.3d at 647. For general personal jurisdiction, the defendant's contacts with the foreign state must be both "continuous and systematic" and "substantial." *Id.* at 647, 650–51. The Defendants in this action have admitted visiting numerous Texas ports in the three years prior to the incident at issue. The very voyage at issue in this case originated in the Houston–Galveston area. Accordingly, although the Court concedes that the instant facts present a somewhat close question, the Court finds that Defendants' contacts with the State of Texas are much more "continuous and systematic" than they are "haphazard and fortuitous." Therefore, the Court concludes that it has general jurisdiction over these Defendants.

The Court further concludes that the exercise of jurisdiction over the Defendants would not offend "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158; *Wilson*, 20 F.3d at 647. There must be a sufficient relationship between the defendant and the forum state that it would be "reasonable . . . to require the corporation to defend the particular suit which is brought there."

---

**1.** In the period between June 3, 1993 and July 4, 1996, these ports included Pasadena, Deer Park, Galveston, Beaumont and Texas City. The vessel visited several of these ports on numerous occasions. Moreover, the vessel was repaired at the Bludworth Bond shipyard in Houston, Texas in August, 1996.

*World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). Here, there is sufficient evidence that the Defendants have had significant contacts with Texas. The Court reiterates the fact that the Defendants made numerous visits to various Texas ports during the three years prior to the incident at issue, and that the voyage at issue originated in Texas. Moreover the vessel has been repaired in Texas. Therefore, the Defendants could "reasonably anticipate" being hailed into court in Texas with respect to an accident occurring on a voyage originating in Texas, even though the alleged accident actually occurred off the coast of Florida.

After careful consideration of the totality of the circumstances, the Court concludes that personal jurisdiction does exist over the Defendants in this action and that the exercise of jurisdiction would be consistent with Constitutional requirements. Accordingly, the Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is hereby **DENIED.**

Turning to the Defendants' Alternative Motion to Transfer Venue, the Defendants contend that the convenience of the parties, witnesses, and attorneys requires a transfer to the Southern District of New York. The Court respectfully but emphatically disagrees.

■ Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The defendant bears the burden of demonstrating to the Court that, in its sound discretion, the Court should transfer the action. *Peteet v. Dow Chemical Co.,* 868 F.2d 1428, 1436 (5th Cir.) (whether to transfer a case is a decision resting within the sound discretion of the District Court), *cert. denied,* 493 U.S. 935, 110 S.Ct. 328, 107 L.Ed.2d 318 (1989); *Time, Inc. v. Manning,* 366 F.2d 690, 698 (5th Cir.1966) (defendant bears the burden of demonstrating that the action should be transferred). When deciding whether a transfer is warranted, the Court considers the following factors: the availability and convenience of witnesses and parties, the location of counsel, the location of books and records, the cost of obtaining attendance of witnesses and other trial expenses, the place of the alleged wrong, the possibility of delay and prejudice if transfer is granted, and the plaintiff's choice of forum, which is generally entitled to great deference. *See, e.g., Dupre v. Spanier Marine Corp.,* 810 F.Supp. 823, 825 (S.D.Tex.1993); *Continental Airlines v. American Airlines,* 805 F.Supp. 1392, 1395–96 (S.D.Tex.1992) (discussing the importance of the plaintiff's choice of forum in light of the policies underlying § 1404(a)).

■ Defendants argue that none of the fact witnesses reside in Texas and are not subject to the subpoena power of this Court. However, only *one* potential fact witness of the ten listed by Defendants resides in New York. Of the other nine listed by Defendants, five reside in Louisiana, two in Massachusetts, one in Florida, and one in Delaware. Plaintiff also points to other potential witnesses in Connecticut, New Jersey and Maryland. *None* of these potential witnesses are subject to the subpoena power of the Southern District of New York. Moreover, most of the expert witnesses for both sides reside in the Houston–Galveston area, well within the subpoena power of this Court, but utterly beyond the subpoena power of the Southern District of New York. The parties should be aware, in any event, that the Court liberally utilizes FED.R.CIV.P. 32 in order to preserve testimony by alternate means in order to minimize inconvenience and any witness may always be preserved by deposition if necessary.

Given that the Plaintiff chose to bring his suit in this District and that essentially all of the possible expert trial witnesses reside in the Houston–Galveston area, the Court concludes that the suggested convenience occasioned by a trial in the Southern District of New York would be virtually non-existent. Because the potential fact witnesses in this case are literally scattered throughout at least nine different states without any significant concentration in New York, Galveston is substantially more convenient as a forum to litigate this case than would be the Southern District of New York. Thus, the Court declines to disturb the forum chosen by the Plaintiff and introduce the certainty of delay

involved in such a transfer simply to avoid the insignificant inconvenience that the Defendants may suffer by litigating this matter in Galveston rather than New York.[2] *See United Sonics, Inc. v. Shock,* 661 F.Supp. 681, 683 (W.D.Tex.1986) (plaintiff's choice of forum is "most influential and should rarely be disturbed unless the balance is strongly in defendant's favor"); *Dupre,* 810 F.Supp. at 828 (a prompt trial "is not without relevance to the convenience of parties and witnesses and the interest of justice.").

Therefore, after careful consideration of the relevant factors and the specific facts of this case, the Court concludes that the Defendants have overwhelmingly failed to carry their burden of demonstrating that a transfer is necessary to serve the interests of justice. Accordingly, the Defendants' Alternative Motion to Transfer Venue is hereby **DENIED.** All parties are **ORDERED** to bear their own costs incurred herein to date.

**IT IS SO ORDERED.**

---

**2.** This case is currently set for trial on August 25, 1997, only one month hence. Therefore, a transfer at this time would certainly result in a significant delay which would surely prejudice the Plaintiff. The Court is already familiar with the facts and circumstances of this case and is ready and able to adjudicate the case fully the week of August 25, 1997. This Court will not burden its esteemed colleagues in the Southern District of New York with a case which it is capable of and delighted to preside over.