**Charles Edward SPEED, Plaintiff,**

v.

**OMEGA PROTEIN, INC., Defendant.**

No. 02–CV–740.

United States District Court,
S.D. Texas,
Galveston Division.

Feb. 21, 2003.

Harold Joseph Eisenman, Attorney at Law, Houston, for Charles Edward Speed, plaintiff.

Robert L Klawetter, Eastham Watson Dale & Forney, Houston, for Omega Protein Inc, Omega Protein Corporation, defendants.

### ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE

KENT, District Judge.

Plaintiff Charles Speed ("Speed") brings this action against Omega Protein, Inc. ("Defendant") for injuries he allegedly sustained while working aboard a vessel owned and operated by Defendant. Speed initially entered into an employment contract with Defendant on April 9, 2002, to work as a fisherman aboard Defendant's vessel. On August 29, 2002, Speed sustained serious injuries when a block smashed into his head during the course and scope of his employment aboard Defendant's vessel, the M/V GULF SHORE. On October 18, 2002, Speed filed the instant action seeking redress for his injuries. Defendant's Motion seeks to dismiss this matter pursuant to Fed.R.Civ.P. 12(b)(3) because of a forum-selection clause in Speed's employment contract with Defendant, which requires all lawsuits arising out of Speed's employment to be filed in a United States District Court in Mississippi or Louisiana. In the alternative, Defendant urges this Court to transfer the present lawsuit to the Western District of Louisiana, Lafayette–Opelousas Division. Speed responds urging the Court to maintain the action, both because

the forum-selection clause is unenforceable, and because the interests of justice militate in favor of maintaining the action in this Division. After thoughtful consideration, and for the reasons articulated below, Defendant's Motion to dismiss for improper venue under Fed.R.Civ.P. 12(b)(3) is respectfully **DENIED,** and Defendant's Motion to Transfer Venue to the Western District of Louisiana is hereby **GRANTED.**

## I. ANALYSIS

### 1. Proper Treatment of Motion

██ Defendant moves to dismiss this action pursuant to Fed.R.Civ.P. 12(b)(3), based on the forum-selection clause in Speed's employment contract. Alternatively, Defendant asks this Court to transfer this lawsuit to the Western District of Louisiana based upon 28 U.S.C. § 1406, if the Court finds that venue is in fact improper, or to transfer the action based upon the convenience of the Parties and in the interests of justice, pursuant to 28 U.S.C. § 1404. The Court recently concluded that 28 U.S.C. § 1404 is the proper means to analyze whether or not to transfer a lawsuit because of a forum-selection clause mandating that the lawsuit be brought in another federal court, if venue is otherwise proper. *See Elliott v. Carnival Cruise Lines,* 231 F.Supp.2d 555, 558–59 (S.D.Tex.2002) ("Because § 1404(a) applies to admiralty cases in the same way that it applies to diversity cases, this Court now holds that when a federal court sitting *either* in admiralty or in diversity must decide whether to enforce a forum-selection clause in which the parties have agreed to resolve their disputes in another federal court, 28 U.S.C. § 1404(a) governs the Court's decision."); *see also Brock v. Baskin–Robbins USA Co.,* 113 F.Supp.2d 1078, 1084–85 (E.D.Tex.2000); *Choice Equip. Sales, Inc. v. Captain Lee Towing,*

*L.L.C.,* 43 F.Supp.2d 749, 754 (S.D.Tex. 1999). Venue is proper in this District because Defendant maintains its headquarters in Houston. *See* 28 U.S.C. § 1391(b). Hence, Defendant's Motion to dismiss for improper venue is respectfully **DENIED.** Now, the Court turns to the forum-selection clause itself to determine its enforceability, and more generally, whether the Parties' interests will be better served by transferring the instant case.

### 2. Motion to Transfer Venue

#### A. *28 U.S.C. § 1404 Standard*

██ Defendant seeks a transfer to the Western District of Louisiana pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Under this statute, Defendant bears the burden of demonstrating to the Court that it should transfer the case. *See Peteet v. Dow Chem. Co.,* 868 F.2d 1428, 1436 (5th Cir.1989) (requiring defendant to make a showing that the forum sought is more convenient); *Time, Inc. v. Manning,* 366 F.2d 690, 698 (5th Cir.1966) (highlighting that the movant bears the burden of demonstrating that the action should be transferred). The decision to transfer a case rests within the sound discretion of the Court, and such determinations are reviewed under an abuse of discretion standard. *See Peteet,* 868 F.2d at 1436 ("A motion to transfer venue is addressed to the discretion of the trial court and will not be reversed on appeal absent an abuse of discretion."); *Jarvis Christian Coll. v. Exxon Corp.,* 845 F.2d 523, 528 (5th Cir.1988) ("Decisions to effect a 1404 transfer are committed to the sound discretion of the transferring judge, and review of a transfer is limited to abuse

of that discretion."); *Marbury–Pattillo Constr. Co. v. Bayside Warehouse Co.,* 490 F.2d 155, 158 (5th Cir.1974) (declaring that a transfer of venue is within the discretion of the trial court and will not be reversed on appeal absent an abuse of discretion).

▆▆ In determining whether a venue transfer is warranted, the Court considers the following factors: the availability and convenience of witnesses and parties; the location of counsel; the location of pertinent books and records; the cost of obtaining attendance of witnesses and other trial expenses; the place of the alleged wrong; the possibility of delay and prejudice if transfer is granted; and the plaintiff's choice of forum. *See, e.g., Henderson v. AT & T Corp.,* 918 F.Supp. 1059, 1065 (S.D.Tex.1996); *Dupre v. Spanier Marine Corp.,* 810 F.Supp. 823, 825 (S.D.Tex.1993); *Hogan v. Malone Lumber, Inc.,* 800 F.Supp. 1441, 1443 (E.D.Tex.1992); *United Sonics, Inc. v. Shock,* 661 F.Supp. 681, 682–83 (W.D.Tex.1986). Generally, a plaintiff's choice of forum is entitled to great deference. *See Continental Airlines, Inc. v. American Airlines, Inc.,* 805 F.Supp. 1392, 1395–96 (S.D.Tex.1992) (discussing the importance of the plaintiff's choice of forum in light of the policies underlying § 1404(a)); *United Sonics,* 661 F.Supp. at 683 (stating that the plaintiff's choice of forum is "most influential and should rarely be disturbed unless the balance is strongly in defendant's favor"). However, when a forum-selection clause purports to govern choice of venue, the Court must address the convenience of the chosen forum given both parties' expressed preference for that venue. *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29–30, 108 S.Ct. 2239, 2244, 101 L.Ed.2d 22 (1988). Before the Court may consider a forum-selection clause in its transfer analysis, the Court must first determine if the forum-selection clause is reasonable, and therefore, enforceable.

*B. Validity of Forum–Selection Clause*

▆▆ A forum-selection clause is unenforceable if it is determined that any of the three following circumstances are applicable: (1) enforcement of the clause would effectively prevent the plaintiff from having his day in court; (2) the forum-selection clause itself was procured by overreaching or fraud; or (3) the Court's enforcement of the forum-selection clause would violate a strong public policy. *See MacPhail v. Oceaneering Int'l, Inc.,* 170 F.Supp.2d 718, 724 (S.D.Tex.2001), *vacated on other grounds,* 302 F.3d 274 (2002). The forum-selection clause at issue is located in Defendant's "Fisherman's Operations and Safety Guide." Further, the clause, found under the section titled "Introduction," states:

> The employee named herein and Omega Protein hereby mutually consent and submit irrevocably and exclusively to the jurisdiction of any United States District Court in the State of Louisiana or Mississippi and agree that venue in such court is proper in connection with any action or proceeding arising out of or relating to named employee's employment with Omega Protein (including any personal injuries arising out of such employment), this Maritime Employment Agreement and/or this Guide.

Additionally, Speed signed a receipt for Defendant's 2002 Fisherman's Operations & Safety Guide. The forum-selection clause is conspicuously reprinted in its entirety directly above Speed's signature on the one-page receipt.

Speed concedes, as he must, that he may have his day in court before one of this Court's colleagues in Louisiana or Mississippi. Additionally, Speed does not allege that the forum-selection clause is a product

of overreaching or fraud. Speed argues that the forum-selection clause is unenforceable because it is conflicts with our legal system's strong public policy of protecting seamen.

 Generally, a forum-selection clause is enforceable unless it "contravene[s] a strong public policy of the forum in which suit is brought, whether declared by statute or judicial decision." *M/S Bremen v. Zapata Off-Shore Comp.*, 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513 (1972). The Court agrees with Speed that it is charged with the task of protecting the rights of seamen. *See Castillo v. Spiliada Mar. Corp.*, 937 F.2d 240, 247 (5th Cir.1991) ("Seamen, as wards of the court, are entitled to a careful review when a district court refuses to exercise jurisdiction over their claims. We are convinced that federal courts must remain vigilant in protecting the rights of seamen, whether foreign or domestic, in their relations with their employer."). Historically, a seaman's unique status stems from seamen's lack of bargaining power when dealing with shipowners. *See id.* at 243 ("A seaman isolated on a ship on the high seas is often vulnerable to the exploitation of his employer. Moreover, there exists a great inequality in bargaining position between large shipowners and unsophisticated seamen. Shipowners generally control the availability and terms of employment."). Despite the special protection afforded to seamen, the Fifth Circuit has held that forum-selection clauses are enforceable even in seamen's contracts. *See Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 221 (5th Cir.1998); *see also Sabocuhan v. Geco–Prakla*, 78 F.Supp.2d 603, 606–07 (S.D.Tex.1999). Thus, the judicial system's policy of protecting seamen, alone, is not enough to find that an otherwise enforceable forum-selection clause in a seaman's employment contract is invalid.

 The forum-selection clause appears twice throughout Defendant's 2002 Fisherman's Operations and Safety Guide. First, it is located in the unlikely location of the Guide's Introduction section. Second, the clause is found on the one-page receipt that Speed signed to acknowledge that he received Defendant's 2002 Fisherman's Operations and Safety Guide. The Court believes that burying the forum-selection clause in the Defendant's 2002 Fisherman's Operations and Safety Guide could indicate overreaching, especially considering that the clause was located in such an unlikely place-the Introduction section. However, the Court does not believe the forum-selection clause was procured by overreaching because Speed signed the one-page receipt, and the receipt contained the clause directly above his signature. Accordingly, for the reasons above, the Court finds the forum-selection clause is enforceable. Therefore, the Court will consider the forum-selection clause in its transfer analysis under § 1404(a).

### C. Weighing the Venue Factors Under 28 U.S.C. § 1404(a)

Defendant maintains that this case should be transferred to the Western District of Louisiana primarily because (1) the forum-selection clause in Speed's employment agreement; (2) the majority of key witnesses reside in that District; (3) Speed resides in Louisiana; (4) the alleged wrong occurred offshore of Louisiana; and (5) Speed will not be prejudiced by the transfer since the Court has not set a trial date. In response, Speed points out that (1) Defendant has its headquarters in Houston; (2) there are five witnesses from Speed's crew that reside in Mexico, and Galveston is more convenient to those witnesses than Louisiana; (3) two treating physicians and an expert that Speed anticipates calling

reside in Houston; (4) counsel for both parties are located in Houston; and (5) Speed's choice of forum in this Division is entitled to great deference.

■ The forum-selection clause "provides some indication that the convenience of the parties would presumably be better served by transfer" to Louisiana. *Lafargue v. Union Pac. R.R.*, 154 F.Supp.2d 1001, 1005 (S.D.Tex.2001). Having determined that the forum-selection clause is enforceable, the Court begins its analysis with the presumption that a Louisiana forum will better serve the Parties' interests. *See Elliott*, 231 F.Supp.2d at 561. Notwithstanding, the Court notes that such presumption alone is not sufficient for Defendant to carry its overall burden of showing that this lawsuit should be transferred. *See Captain Lee Towing*, 43 F.Supp.2d at 754.

### 1. *Availability and Convenience of Witnesses and Parties*

■ As this Court has often stated, the convenience of key witnesses is the most significant aspect of a motion to transfer venue. *See, e.g., Gundle Lining Constr. Co. v. Fireman's Fund Ins. Co.*, 844 F.Supp. 1163, 1166 (S.D.Tex.1994); *Continental Airlines*, 805 F.Supp. at 1396. In support of its Motion, Defendant contends that nearly all of the key witnesses that it intends to call reside in Louisiana. First, Defendant points out that no witnesses reside in Texas other than Speed's three experts. Second, Defendant anticipates calling the two physicians that Speed saw in Louisiana, before he sought the services of the Houston physicians. Third, six of the twelve members of the crew that witnessed Speed's accident reside in Louisiana, while five reside in Mexico. Last, Defendant contends that Speed will not be inconvenienced by a trial in Louisiana since he resides there as well. On the

other hand, Speed anticipates calling one expert along with two of his current treating physicians, all of whom live in Houston. Further, Defendant's principal place of business is in Houston.

■ The Court would normally discount the inconvenience of Defendant's employees who witnessed the accident since their testimony can be compelled. *See Continental Airlines*, 805 F.Supp. at 1397 (explaining that witnesses who are employees of a defendant are "entitled to less weight because that party will be able to compel their testimony at trial"). However, it is undisputed that eleven of the twelve members of the crew are seasonal workers; thus, Defendant is not presumed able to compel their testimony. Additionally, although only half of the potential fact witnesses reside in Louisiana, none reside in Texas. Even if it is necessary to bring the five witnesses from Mexico to trial, Galveston is only slightly closer than Louisiana.

On the other hand, the Court notes that testimony of all twelve crew members is cumulative, and Defendant likely will only call two or three of these witnesses, if any at all. Moreover, this Court discounts the inconvenience to Defendant since it resides in and enjoys an overwhelming business presence in this District. *See Blansett v. Continental Airlines*, 203 F.Supp.2d 736, 743 (S.D.Tex.2002). Therefore, this Court's conclusion on this factor essentially boils down to balancing the convenience of the two physicians in Houston who are currently treating Speed, versus the convenience of a few of Speed's crew members who witnessed the accident along with the physicians that treated him following the accident, all of whom reside in Louisiana. Although the Court feels this determination is a closer question than it first appeared, after careful deliberation,

the Court finds that this factor favors transfer.

### 2. *Location of Counsel*

 Although the location of counsel is relevant to the venue inquiry, the Court ultimately places little emphasis on this factor. *See Dupre*, 810 F.Supp. at 826 (recognizing that the vast majority of cases hold that location of counsel is entitled to little consideration). Both counsel maintain their offices in Houston. Therefore, this factor weighs against transfer.

### 3. *Location of Books and Records*

 Generally, the location of books and records is of little importance in a personal injury action. *See Dupre*, 810 F.Supp. at 826–27. Conceivably, the physicians from both Louisiana and Houston have medical records but these records are not voluminous enough to be taken into account. As such, this factor does not operate against or in favor of transfer.

### 4. *Trial Expenses*

 Defendant does not present any specific evidence indicating that a trial in the Southern District of Texas would prove more costly than a trial in Louisiana. However, Defendant contends that the travel expenses for its anticipated witnesses to travel to Galveston is much greater than the costs of trying this action in Louisiana. Generally, the Court agrees with Defendant that a trial in Louisiana will be less costly because five of the eight or nine likely total witnesses live in Louisiana. However, the Court believes that Defendant exaggerates the theoretical extra costs of a trial in Galveston because, as the Court already pointed out, Defendant exaggerates the number of witnesses it plans to call. Thus, this factor favors transfer, but only slightly.

### 5. *Location of the Alleged Wrong*

 The place of the alleged wrong is of primary importance in the Court's venue determination. *See Henderson*, 918 F.Supp. at 1067. The Court gives less consideration to this factor since the accident did occur offshore in the Gulf of Mexico, even though the accident was in Louisiana state waters. But since the accident occurred only a short distance from the shore, this factor still plays a considerable role in the Court's analysis. Thus, this factor favors transfer.

### 6. *Plaintiff's Choice of Forum and Possibility of Delay*

 Plaintiffs' choice to litigate this action in the Galveston Division of the Southern District of Texas is entitled to great deference. *See United Sonics*, 661 F.Supp. at 683 (emphasizing that plaintiff's choice of forum is "most influential and should rarely be disturbed unless the balance is strongly in defendant's favor"). Furthermore, the possibility of delay or prejudice if the case is transferred always plays a large role in the Court's venue analysis. *See Dupre*, 810 F.Supp. at 828. Here, the possibility of delay and prejudice to Speed is minimal since the Court has not set a trial date yet.

 This Court always affords a plaintiff significant deference to his choice of forum. However, this deference taken together with the fact that Parties' counsel reside in this District, are not enough to overcome the forum-selection clause and other factors that favor transfer. The Court would be deeply troubled if the forum-selection clause required Speed to prosecute his lawsuit on the other side of the United States. In that case, the forum-selection clause's purpose would clearly be to so inconvenience a plaintiff that he might be discouraged from pursuing any action against the defendant. This is not

the case in the instant lawsuit. While Defendant has a Houston operation, the center of operations appear to be squarely in Louisiana. The accident occurred offshore of Louisiana. The majority of the key witnesses reside in Louisiana. Speed was subsequently treated in and resides in Louisiana. Last, the forum-selection clause allowed Plaintiff the choice of filing the action in any United States District Court in Louisiana or Mississippi. For all of the reasons expressed above, after thoughtful consideration, the Court concludes that Defendant has carried its burden.

## II. CONCLUSION

Before concluding, the Court notes that the Parties' counsel did an excellent job of briefing the matter to the Court. The Court appreciates and relies on the symbiotic relationship it has with good lawyers that practice before it, such as these. After examining the relevant venue factors, coupled with the specific facts of this lawsuit, the Court concludes that Defendant has carried its burden of demonstrating that a transfer to the Western District of Louisiana is necessary to serve the interests of justice and for the convenience of all involved. The forum-selection clause along with the other considerations favoring transfer suffice to outweigh the substantial deference that the Court affords to Speed's choice to litigate this action in Galveston. The Court **GRANTS** Defendant's Motion to Transfer Venue to the Western District of Louisiana and hereby **ORDERS** that this case be transferred to the Western District of Louisiana, Lafayette–Opelousas Division.

**IT IS SO ORDERED.**